## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BENJAMIN MADSEN, an individual, and MADSEN BOWLING AND BILLIARD CENTER CO., a Nebraska Corporation, | Case No. 4:21-CV-03075 |
| **Plaintiffs,** | |
| v. | |
| CITY OF LINCOLN, et al., | |
| **Defendants.** | |

## BRIEF IN SUPPORT OF CITY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Yohance L. Christie - # 24271
Danielle Rowley - #25505
Richard W. Tast Jr. - # 25832
CITY OF LINCOLN – LAW
DEPARTMENT
555 South 10th Street, Suite 300
Lincoln, NE 68508
(402) 441-7281
ychristie@lincoln.ne.gov

Andre R. Barry - # 22505
CLINE WILLIAMS WRIGHT
JOHNSON & OLDFATHER, L.L.P.
233 South 13th Street
1900 U.S. Bank Building
Lincoln, NE 68508
(402) 474-6900
abarry@clinewilliams.com

**EVIDENCE ATTACHED TO AND CITED WITHIN BRIEF IN RESPONSE TO
MOTION FOR JUDGMENT ON THE PLEADINGS
OF DEFENDANTS CITY OF LINCOLN, LEIRION GAYLOR BAIRD,
PATRICIA D. LOPEZ, AND JEFFREY BLIEMEISTER**

1.      Exhibit A – Communicable Disease Act
        (Certified Copy of Lincoln Municipal Code Chapter 8)

2.      Exhibit B – Lincoln-Lancaster County Directed Health Measure 2020-02
        (Certified Copy of LLCHD DHM 2020-02)

Defendants, City of Lincoln ("City"), Mayor Leirion Gaylor Baird ("Mayor"), in her official and individual capacity, Health Director Patricia D. Lopez ("Health Director"), in her official and individual capacity and former Police Chief Jeffrey Bliemeister ("Police Chief"), in his official capacity (collectively "City Defendants"), respectfully submit this brief in support of their Motion for Judgment on the Pleadings.

## INTRODUCTION

Plaintiffs Benjamin Madsen and Madsen Bowling and Billiard Center Co. ("Plaintiffs") allege they were harmed by the adoption, implementation, and enforcement of Directed Health Measures ("DHMs") by the City Defendants in response to the COVID-19 pandemic. (Doc. #1-1, at CM/ECF p. 2, ¶ 1). In their Complaint which spans thirty-four pages and 172 paragraphs, Plaintiffs seek remedies at law and in equity under Nebraska common law (abuse of power, violation of the Nebraska Constitution and the Open Meetings Act) and under 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth and Fourteenth Amendments, as well as the Ex Post Facto clause of Article 1, § 10 of the United States Constitution. (Doc. #1-1, at CM/ECF p. 23-30). Plaintiffs' federal constitutional claims against the non-entity City Defendants are either redundant of their claims against the City of Lincoln or barred by qualified immunity. And Plaintiffs' federal constitutional claims against the City fail to state a valid cause of action or a basis for liability because a municipality may not be held vicariously liable for the unconstitutional acts of its employees under § 1983. Accordingly, the Court should enter judgment on the pleadings against the Plaintiffs on these claims.

# BACKGROUND

The facts established by the pleadings[1], as relevant to the City Defendants' Motion for Judgment on the Pleadings, are set forth below:

***Parties.***

1.      Plaintiff Benjamin Madsen is a resident of Lincoln, Lancaster County, Nebraska. (Doc. #1-1, at CM/ECF p. 2, ¶ 3).

2.      Plaintiff Madsen Bowling and Billiards Center Co. is an S Corporation located in Lincoln, Lancaster County, Nebraska. (Doc. #1-1, at CM/ECF p. 2, ¶ 2); Doc. #20, at CM/ECF p. 2, ¶ 2).

3.      Defendant City of Lincoln ("City") is a city of the primary class located in Lancaster County, Nebraska. (Doc. #1-1, at CM/ECF p. 2, ¶ 5); (Doc. #20, at CM/ECF p. 3, ¶ 5).

4.      A City with a population of more than one hundred thousand inhabitants is a city of the primary class. Neb. Rev. Stat. § 15-102 (Reissue 2012).

5.      Defendant Leirion Gaylor Baird ("Mayor Gaylor Baird"), Mayor of the City of Lincoln, is a resident of Lancaster County, Nebraska. (Doc. #1-1, at CM/ECF p. 3, ¶ 6); (Doc. #20, at CM/ECF p. 4, ¶ 6).

6.      Defendant Patricia D. Lopez ("Health Director Lopez") is the Director of the Lincoln-Lancaster County Health Department. (Doc. #1-1, at CM/ECF p. 3, ¶¶ 8-9; (Doc. #20, at CM/ECF p. 4-5, ¶¶ 8-9).

---

[1] City Defendants accept these facts as true solely for purposes of this Motion.

7.     Defendant Jeffrey Bliemeister ("Bliemeister") was the Chief of Police of the Lincoln Police Department ("LPD"). (Doc. #1-1, at CM/ECF p. 3, ¶ 7); (Doc. # 20, at CM/ECF p. 4, ¶ 7).

**Lincoln-Lancaster County Health Department.**

8.     Local public health departments shall make and enforce regulations to prevent the introduction and spread of contagious, infectious, and malignant diseases in the county under its jurisdiction. Neb. Rev. Stat. § 71-501(1) (Reissue 2018).

9.     Local public health department means a city-county health department approved by the Nebraska Department of Health and Human Services ("DHHS"). Neb. Rev. Stat. § 71-1624 (Reissue 2018).

10.     The Lincoln-Lancaster County Health Department was created by interlocal agreement on April 6, 1998, and approved by DHHS on April 15, 1998. (Doc. #1-1, at CM/ECF p. 3, ¶ 8); (Doc. #26-1, at CM/ECF p. 1-14)[2].

11.     The Health Director shall investigate the existence of any contagious or infectious disease and adopt measure to arrest the progress of the disease. Neb. Rev. Stat. § 71-1630(4)(d)(iii) (Reissue 2018).

12.     The Health Director of the Lincoln-Lancaster County Health Department ("Health Director") may order the closure of, or restrict access to any

---

[2] When considering a motion for judgment on the pleadings, the court generally must ignore materials outside the pleadings, but it may consider "some materials that are part of the public record or do not contradict the complaint," *Missouri ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1107 (8th Cir.), *cert. denied,* 527 U.S. 1039, 119 S. Ct. 2400 (1999), as well as materials that are "necessarily embraced by the pleadings." *Piper Jaffray Cos. v. National Union Fire Ins. Co.,* 967 F. Supp. 1148, 1152 (D.Minn.1997). *See also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1357, at 299 (1990) (court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

business, healthcare facility, school or government agency or department for the purpose of controlling the spread of disease or for any activity related to controlling the spread of disease. (Doc. #1-1, at CM/ECF p. 5, ¶ 21); Exhibit A, at p. 7 (Lincoln Municipal Code ("LMC") 8.18.140(b)).

13.     In addition to the Health Director, LPD shall enforce any and all orders issued by the Health Director. Exhibit A at p. 7 (LMC 8.18.140(a)).

***COVID-19 Pandemic.***

14.     On March 6, 2020, the first presumptive positive case of coronavirus disease ("COVID-19") was reported in Nebraska. (Doc. #6-1, at CM/ECF p. 12-16).

15.     On March 13, 2020, Donald Trump, then President of the United States of America, declared a National Emergency regarding the COVID-19 outbreak in the United States. (Doc. #6-1, at CM/ECF p. 17-19).

16.     On the same day, Pete Ricketts, Governor of Nebraska, declared a State of Emergency regarding the COVID-19 outbreak in Nebraska. (Doc. #6-1, at CM/ECF p. 20).

17.     On March 18, 2020, DHHS issued the first DHM which limited public gatherings in Cass, Douglas and Sarpy counties in Nebraska. (Doc. #6-1, at CM/ECF p. 21).

18.     On March 25, 2020, DHHS issued the first DHM for Lancaster County which limited gatherings, restricted alcohol, food and beverage sales to carry-out and delivery and reduced the capacity of daycare and childcare facilities. (Doc. #1-1, at CM/ECF p. 7, ¶ 34); (Doc. #20, at CM/ECF p. 12, ¶ 34).

19.     On March 25, 2020, Health Director Lopez issued a similar DHM DHHS issued on the same day. (Doc. #1-1, at CM/ECF p. 7, ¶ 34); (Doc. #6-1, at CM/ECF p. 25-28); (Doc. #20, at CM/ECF p. 12, ¶ 34).

20.     On April 30, 2020, DHHS issued a DHM for Lancaster County which limited gatherings, restricted alcohol, food and beverage sales to carry-out and delivery, closed businesses and schools, and limited elective surgeries. https://dhhs.ne.gov/Archived%20DHMs/LLHD-May%204-2020.pdf (last visited August 23, 2021).

21.     On May 4, 2020, Health Director Lopez issued a DHM for Lancaster County which was in some respects more restrictive than the DHM issued by DHHS on April 30, 2020. (Doc. #1-1, at CM/ECF p. 7, ¶ 35); (Doc. #20, at CM/ECF p. 12, ¶ 35). Specifically, the DHM issued by Health Director Lopez limited gatherings of ten or more patrons where a minimum distance of six feet between individuals could not be maintained, the capacity for daycare and childcare and limited door-to-door sales within the City. Exhibit B.

22.     Since May 4, 2020, Health Director Lopez has continued to issue DHMs for Lancaster County and the City, some of which were more restrictive in certain respects than those issued by DHHS for Lancaster County. (Doc. #1-1, at CM/ECF p. 8, ¶ 36); (Doc. #20, at CM/ECF p. 4, ¶ 8).

23.     The penalty for violating a DHM issued by Health Director Lopez is a fine of up to $500 and up to six months in jail. Exhibit A at p. 7 (LMC 8.18.170).

24.     Mayor Gaylor Baird encouraged the public to report suspected violations of DHMs. (Doc. #1-1, at CM/ECF p. 13, ¶ 73); (Doc. #20, at CM/ECF p. 23, ¶ 73).

25.     In their Fourth Cause of Action, set forth in paragraphs 141 through 156 of their Third Amended Complaint (Doc. 1-1), Plaintiffs allege a laundry list of federal constitutional violations against the City Defendants:

a.     That the Communicable Disease Act and DHMs are, on their face and as applied, unconstitutionally vague, overbroad, and violative of substantive and procedural due process in violation of the Fifth and Fourteenth Amendments. (Doc. #1-1, at CM/ECF p. 28-29, ¶¶ 144, 147).

b.     That enforcement of the Communicable Disease Act and DHMs constituted an impermissible seizure in violation of the Fourth Amendment. (Doc. #1-1, at CM/ECF p. 28, ¶ 145).

c.     That Defendants unconstitutionally delegated their police powers to private businesses and individuals, and the Board of Health and Health Departments unconstitutionally delegated authority to Lopez, all in violation of Article VI, § 3 and Article II, § 3 of the Constitution. (Doc. #1-1, at CM/ECF p. 28-29, ¶ 146).

d.     That Defendants violated Plaintiffs' right to free speech under the First Amendment by encouraging and engaging in retaliation for Plaintiffs' political speech and conduct. (Doc. #1-1, at CM/ECF p. 28-29, ¶¶ 147-149).

e.     That the limitations on gatherings in the DHMs violate the freedom to peaceably assemble and the freedom of association as guaranteed by the First Amendment. (Doc. #1-1, at CM/ECF p. 29, ¶ 150).

f.    That the other limitations in the DHMs are arbitrary and capricious or lack factual or scientific basis in violation of First, Fourth, Fifth, and Fourteenth Amendments. (Doc. #1-1, at CM/ECF p. 30, ¶ 151).

g.    That the vote to approve Lopez as Health Director on August 17, 2020, and to approve her prior actions, violated the Ex Post Facto Clause of Article I, § 10 of the Constitution, as well as Plaintiffs' right to due process under the Fifth and Fourteenth Amendments. (Doc. #1-1, at CM/ECF p. 30, ¶¶ 152-153).

h.    That the DHMs and their enforcement violation the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (Doc. #1-1, at CM/ECF p. 30, ¶ 154).

## SUMMARY OF ARGUMENT

The City Defendants' Motion for Judgment on the Pleadings is directed at Plaintiffs' federal constitutional claims, which are asserted in Plaintiffs' Fourth Cause of Action.  Plaintiffs' federal claims for injunctive relief against Mayor Gaylor Baird, Health Director Lopez and former Police Chief Bliemeister, in their official capacities, are subject to dismissal because they are duplicative of Plaintiffs' claims against the City.  Plaintiffs' federal claims for damages against the Mayor Gaylor Baird and Health Director Lopez, in their individual capacities, are subject to dismissal under the doctrine of qualified immunity.  Plaintiffs' federal claims against the City are subject to dismissal, both because Plaintiffs' have failed to state a claim on which relief can be granted, and because they have failed to plausibly allege an

official policy, an unofficial custom, or a deliberate failure to train that resulted in a constitutional violation.

## LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings must be granted where there is no material issue of fact thereby entitling the moving party to judgment as a matter of law. *See Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004). The same standard used in considering a Rule 12(b)(6) motion to dismiss for failure to state a claim is applied in evaluating a motion for judgment on the pleadings. See *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). The court assumes the facts alleged in the complaint are true and construes all reasonable inferences in plaintiff's favor, but it need not accept wholly conclusory allegations or legal conclusions. See *Hanten v. Sch. Dist. Of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999).

For the plaintiff to survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Mere "labels and conclusions" are insufficient. *Id*. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 555).

10

## I.   Plaintiffs' official capacity claims against the Mayor, Health Director and Police Chief are all subject to dismissal.

Plaintiffs have named three defendants in their official capacities—Mayor Gaylor Baird, Health Director Lopez, and former Police Chief Bliemeister. Plaintiffs' official capacity claims against these defendants should be dismissed as redundant as their claims against the City. "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (citing *Hafer v, Melo,* 502 U.S. 21, 25 (1991)). Thus, "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). "[A] suit against a government official in only his official capacity should be dismissed as redundant if the employing entity is also named." *King v. City of Crestwood, Missouri*, 899 F.3d 643, 650 (8th Cir. 2018) (citing *Veatch*, 627 F.3d at 1257).

## II.   Mayor Gaylor Baird and Health Director Lopez are entitled to qualified immunity from Plaintiffs' individual capacity claims against them.

Plaintiffs have asserted individual capacity claims for damages against two of the City Defendants—Mayor Gaylor Baird and Health Director Lopez. Plaintiffs' claims against these defendants are subject to dismissal on grounds of qualified immunity.

Qualified immunity provides officials with immunity from suit, not simply a defense to liability. *Watson v. Boyd*, 2 F.4th 1106, 1110; see also *Sanchez v. Bremer*, No. 8:11-CV-314, 2012 WL 3018615, at *3 (D. Neb. July 24, 2012). "Its purpose is to

11

avoid subjecting government officials to the costs of trial or to the burdens of broad-reaching discovery in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Sanchez*, 2012 WL 3018615, at *3. Qualified immunity protects a government official "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009). The court may address either prong of the test for qualified immunity first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808 (2009)).

In this case, as set forth below, the Mayor and Health Director are entitled to qualified immunity under both prongs. *First,* the facts alleged in Plaintiffs' Third Amended Complaint (Doc. #1-1) fail to demonstrate the deprivation of any constitutional or statutory right:

1. Enforcement of the Communicable Disease Act (Exhibit A, LMC 8-18) and adoption and enforcement of the DHMs to fight the COVID-19 pandemic, do not violate substantive due process. Governmental officials have broad discretion to protect public health, particularly when confronted with a public health emergency with the scope of COVID-19. Plaintiffs' attempt to compare local DHMs to state DHMs is

12

irrelevant, because a violation of state law does not equate to a violation of substantive due process.

2. Because the Communicable Disease Act and DHMs are generally applicable, Plaintiffs had no right to procedural due process in connection with their adoption.

3. Enforcement of the DHMs does not constitute a seizure in violation of the Fourth Amendment.

4. Plaintiffs have failed to plausibly allege a violation of the First Amendment. Plaintiffs do not deny that they violated the DHMs, and do not identify a single business that violated the DHMs and was not the subject of enforcement. Content-neutral limits on public gatherings designed to slow the spread of disease do not violate the First Amendment.

5. Plaintiffs' non-delegation claims against the Mayor Gaylor Baird and Health Director Lopez have no basis in the United States Constitution.

6. There is no plausible allegation that the DHMs violate the ADA or that Plaintiffs would have constitutional standing to bring such a claim.

Second, Plaintiffs have failed to identify any case law demonstrating the violation of a clearly established constitutional right by any of the individual defendants that could overcome the defense of qualified immunity. Third, even if the law clearly recognized a constitutional or statutory right claimed by Plaintiffs, in most instances Plaintiffs have failed to articulate any actual conduct by the Mayor Gaylor Baird or Health Director Lopez that caused the alleged violation.

13

**A.  The facts viewed in the light most favorable to Plaintiffs do not show the violation of any federal constitutional right.**

Plaintiffs attempt to allege a grab bag of violations of the First, Fourth, Fifth[3], and Fourteenth Amendments, Article II and Article VI of the Constitution, and the ADA. None of their attempts manage to plausibly assert an actual violation of a federal constitutional right.

**1.  The Communicable Disease Act and DHMs do not violate substantive due process.**

"To state a plausible substantive-due-process claim, [a plaintiff] must allege that a government action was 'sufficiently outrageous' or 'truly irrational, that is, something more than … arbitrary, capricious, or in violation of state law.'" *Harrington v. City of Omaha,* No. 8:20-CV-412, 2021 WL 2321757, at *22 (D. Neb. June 7, 2021) (citing *Young v. City of St. Charles,* 244 F.3d 623, 628 (8th Cir. 2001); *Anderson v. Douglas Cnty.*, 4 F.3d 574, 577 (8th Cir. 1993). Sufficiently outrageous or truly irrational is a high standard. *Harrington,* 2021 WL 2321757, at *22 (citing *Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 937 (8th Cir. 2012). To find a government action sufficiently outrageous requires "violations of personal rights ... so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the

---

[3] Plaintiffs have attempted to assert due process claims under both the Fifth and Fourteenth Amendments.  The Fifth Amendment applies to actions of the federal government, but not local governments or officials such as the City of Lincoln, its Mayor, Health Director, and Police Chief.  *See Livers v. Schenck,* 700 F.3d 340, 351 (8th Cir. 2012).  Therefore, Plaintiffs' due process claims should be analyzed only under the Fourteenth Amendment.  But even if Plaintiffs' claims were analyzed under the Fifth Amendment, they would still fail for the reasons discussed above.

conscience." *Harrington,* 2021 WL 2321757, at *22; (citing *Christiansen*, 674 F.3d at 937-38; *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. 347*, 591 F.3d 624, 634 (8th Cir. 2010)).

> ### a. The broad latitude given to public officials to combat a public health crisis protects Mayor Gaylor Baird and Health Director Lopez from liability.

During a public health crisis such as the one presented by COVID-19, the degree of discretion which this high standard affords public officials is particularly broad. In *Jacobson v. Massachusetts,* 197 U.S. 11, 25 S. Ct. 358 (1905), the Supreme Court held that, when faced with a public health crisis, a state may implement measures that infringe on constitutional rights, because "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27, 25 S. Ct. 358. Therefore, while constitutional rights do not disappear during a public health crisis, "the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." *Id.* at 29, 25 S. Ct. 358.

The facts alleged by Plaintiffs do not meet this high standard required to show a violation of substantive due process. There is nothing about limiting capacity at daycare and childcare facilities, establishing early closing times at bars and restaurants, social distancing, or requiring face coverings that shocks the conscience. To the contrary, all of these nonpharmacologic interventions are much better than the alternative which is to close businesses in their entirety. *See, e.g.*, *Disbar Corp. v. Newsom*, 508 F. Supp. 3d 747, 752–53 (E.D. Cal. 2020) (order requiring residents to

stay at home as much as possible and minimize mixing with other households to prevent the spread of COVID-19 does not shock the conscience).

      **b.**    **Substantive due process does not restrict local DHMs from going further than statewide restrictions.**

Plaintiffs may also attempt to argue that the DHMs here violate substantive due process because they were more restrictive than DHMs issued by the State of Nebraska (through DHHS), which they claim is prohibited by state law. Plaintiffs are incorrect in arguing that Nebraska law prohibits more restrictive local DHMs. But even if Plaintiffs' reading of state law were correct, it would be irrelevant to their federal constitutional claim. A mere violation of state law, even if undertaken knowingly and in bad faith, does not automatically equate to a violation of due process. *Chesterfield Dev. Corp. v. Chesterfield,* 963 F.2d 1102 (8th Cir. 1992). It is absurd to suggest that it "shocks the conscience" for a local law to be more restrictive than state law in requiring measures to protect public health. Thus, Plaintiffs cannot salvage their substantive due process claim by attempting to compare the City's DHM to those adopted by the State of Nebraska.

      **c.**    **It does not violate substantive due process for a DHM to require business owners to require patrons to follow health public health regulations.**

Plaintiffs cite to no authority suggesting that it violates substantive due process to require the owner of a bar or restaurant to instruct patrons to comply with public health and safety measures, to ask patrons who refuse to do so to leave, and to contact law enforcement if patrons fail to comply. Virtually all places open to the public have rules of conduct and/or entry that are applied to patrons. It is

commonplace for restaurants to prohibit outside food and to enforce the rule of "no shoes, no shirt, no service." Patrons who do not comply with these rules of conduct can be asked to leave. Further, these rules of conduct can ultimately be enforced by a police officer. There is no substantive due process violation for complying with these rules of conduct, and likewise there is no violation for telling customers to wear a mask and comply with social distancing parameters of a DHM.

### 2. Plaintiffs have not alleged an actionable violation of procedural due process.

The only procedural due process violation Plaintiffs allege is a "failure to give proper notice and opportunity for [them] to be heard" at a City Council meeting on August 17, 2020. (Doc. #1-1, at CM/ECF p. 30, ¶ 153). "To establish a violation of procedural due process, a plaintiff must show he has been deprived of a constitutionally protected life, liberty, or property interest." *Harrington,* 2021 WL 2321757, at *20 (citing *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011)). Plaintiffs have alleged no facts to indicating deprivation of life or liberty interests, which only leaves an interest in property.

As both the United States Supreme Court and the Nebraska Supreme Court have clearly held, there is no right to procedural due process in the adoption of a generally applicable rule:

> Where a rule of conduct applies to more than a few people it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex

society, by their power, immediate or remote, over those who make the rule.

*State ex rel. Spire v. Northwestern Bell Telephone Co.*, 233 Neb. 262, 284, 445 N.W.2d 284, 298 (1989) (quoting Justice Holmes' decision in *Bi-Metallic Co. v. Colorado*, 239 U.S. 241 (1915) and also citing *United States v. Florida East Coast Ry. Co.*, 410 U.S. 224 (1973)). See also *SH3 Health Consulting, LLC v. Page*, No. 4:20-CV-00605 SRC, 2020 WL 2308444, at *9 (E.D. Mo. May 8, 2020) (no violation of substantive or procedural due process rights due to emergency powers enacted in response to COVID-19 pandemic for the safety of the general public); *Benner v. Wolf,* 461 F. Supp. 3d 154, 495 (M.D. Pa. May 21, 2020) (plaintiffs were not likely to succeed on their deprivation of due process argument due to state executive order closure; "individualized pre-deprivation process" would "render ineffective any public health measure meant to combat viral spread").

Because the actions taken at the August 17, 2020, meeting of the Lincoln City Council were generally applicable, Plaintiffs had no constitutional right to due process in connection with that meeting, and their claim for violation of that right is subject to dismissal.

### 3.     Plaintiffs have failed to allege a seizure in violation of the Fourth Amendment.

Plaintiffs allege the "enforcement of the City's Communicable Disease Act under the LMC (Exhibit A) and DHMs in this case constituted an impermissible seizure" in violation of the Fourth Amendment. (Doc. #1-1, at CM/ECF p. 28, ¶ 145). It is unclear what seizure Plaintiffs are alleging occurred here. The only reference to the word "seizure" in Plaintiffs' Third Amended Complaint appears to allege, in

conclusory fashion, a physical seizure of their business. (Doc. #1-1, at CM/ECF p. 15, ¶ 81). However, there is no explanation as to the nature of the alleged "physical seizure." For this reason alone, Plaintiffs have failed to state a claim upon which relief can be granted.

Even if Plaintiffs had asserted factual content sufficient to allow this Court to draw a reasonable inference that the City Defendants had "seized" Plaintiffs' business, Plaintiffs have still failed to state a claim for relief because they have not asserted any reasonable expectation of privacy. In fact, the word "privacy" is not mentioned at all in Plaintiffs' Third Amended Complaint. City Defendants admit that an individual can have a reasonable expectation of privacy in commercial premises, but that expectation is far less than that of an individual's home. See *U.S. v. Lewis*, 864 F.3d 937, 941 (8th Cir. 2017). Further, government employees, like former Police Chief Bliemeister or any other LPD officer, may enter the premises of Madsen's Bowling and Billiards Center to enforce a DHM. *Id.* Employees, like Benjamin Madsen, have no reasonable expectation of privacy against ordinary use of areas where the public is invited to enter and transact business. *Id.*

This Court recently addressed this issue in *Harrington*. The Plaintiffs in that case alleged Omaha Police Department officers "entered Club Omaha without a warrant and told [the owner] there was a 10-person congregation limitation including staff." *Harrington*, 2012 WL 2321757, at *15. Because Plaintiffs did not allege any police officer entered any area of Club Omaha, a commercial establishment, where an employee would have an objectively reasonable expectation of privacy, they failed to state a claim for a violation of the Fourth Amendment. *Id.* Because the Plaintiffs

here have not alleged any facts to suggest any City Defendant has violated a reasonable expectation of privacy, they have failed to state a claim for relief under the Fourth Amendment.

### 4. Plaintiffs have not alleged an actionable violation of the First Amendment.

Plaintiffs claim that City Defendants have somehow "abused their power by encouraging and engaging in retaliation against Plaintiffs for their political speech and conduct." (Doc. #1-1, at CM/ECF p. 29, ¶¶ 148-149). In order to plausibly allege such a claim, Plaintiffs must point to actual facts showing that they were singled out for adverse treatment because of their political speech. *Harrington*, 2021 WL 2321757, at *16. Plaintiffs have failed to include any such allegations in their Third Amended Complaint. Plaintiffs do not explain how any Defendant, including Mayor Gaylor Baird or Health Director Lopez, engaged in retaliation. They do not deny that they violated the DHMs and fail to allege facts to show that they were treated differently than any similarly situated business because of their political speech.

Plaintiffs also allege that the limits on gatherings in the DHMs violate their rights to assembly and association under the First Amendment. The Freedom of Association Clause of the First Amendment is not absolute. *International Ass'n v. City of Kansas City,* 220 F.3d 969 (8th Cir. 2000)). The "right to expressive association … can be infringed upon if that infringement is (i) unrelated to the suppression of expressive association; (ii) due to a compelling government interest; and (iii) narrowly tailored." *Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1158 (D.N.M. 2020) (citing *Roberts v. United States Jaycees,* 468 U.S. 609, 623, 104 S. Ct. 3244 (1984)).

E.g., *Irshad Learning Ctr. v. Cty. of DuPage,* 804 F. Supp. 2d 697, 718 (N.D. Ill. 2011) ("The First Amendment right to freedom of association, however, is not abridged merely because a religious group cannot assemble at a particular location of property"). The United States Supreme Court has a "settled rule" that "under the pressure of great dangers," constitutional rights may be restricted "as the safety of the general public may demand." *In re Abbott,* 954 F.3d 772, 776-77 (5th Cir. Apr. 13, 2020) (citing *Jacobson*, 197 U.S. at 29, 25 S. Ct. 358 (1905)).

A global pandemic and prevention or limitation of its outbreak are a compelling state interest for enactment and enforcement of the DHMs. The case of *Givens v. Newsom,* No. 220-CV-00852, 2020 WL 2307224, at *7 (E.D. Cal. May 8, 2020) states:

> "Upon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27, 25 S. Ct. 358, 49 L. Ed. 643 (1905). The Supreme Court penned those words over a hundred years ago, but they remain relevant today. In *Jacobson,* the Supreme Court upheld a state's exercise of its general police powers to promote public safety during a public health crisis. *Id.* at 25, 25 S. Ct. 358. A state's police power entails the authority "to enact quarantine laws and 'health laws of every description'"—even under normal circumstances. *Id.* Under normal circumstances, however, state regulations enacted pursuant to a general police power must, "always yield in case of conflict" to both the Constitution and permissible exercises of federal authority.

See also *SH3 Health Consulting, LLC v. Page,* No. 4:20-CV-00605, 2020 WL 2308444, at *8 (E.D. Mo. May 8, 2020).

In a November 2020 case involving a bar challenging the Illinois Governor's executive orders prohibiting indoor service at bars and restaurants, the federal court in the Southern District of Illinois denied a bar's motion for preliminary injunction, noting that "[i]n the United States alone, the virus has infected over 11.5 million and

claimed the lives of more than 250,000 people. There is no doubt that this country ... and in fact the world is in the midst of the deadliest pandemic in modern history. As a result, relying on *Jacobson*, courts across the country have consistently declined to enjoin state and local restrictions aimed at protecting the public against the spread of COVID-19." *H's Bar, LLC v. Berg*, No. 20-CV-1134-SMY, 2020 WL 6827964, at *4 (S.D. Ill. Nov. 21, 2020). The court went on to note that "[e]ven if the deferential *Jacobson* standard did not apply, Plaintiff's First Amendment claims are unlikely to succeed under traditional First Amendment analysis as there is no constitutional right to social associations." *H's Bar, LLC,* 2020 WL 6827964, at *4 (citing *City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S. Ct. 1591 (1989) (dance-hall patrons' gathering to engage in recreational dancing is not constitutionally protected even though "[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—[as] such a kernel is not sufficient to bring the activity within the protection of the First Amendment").

Reasonable restrictions on speech may be imposed by the government if those restrictions also "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753 (1989). "The reasonableness of a restriction on access is supported when 'substantial alternative channels' remain open for the restricted communication." *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 335 (8th Cir. 2011) (citation omitted). Plaintiffs' First Amendment rights have not been infringed. Ample alternative channels exist for Plaintiffs to engage in expressive

conduct, including through social media and other virtual media or through in-person, socially distanced conduct within the bounds of the DHMs.

### 5.     There is no legal basis for Plaintiffs' claims under Article II and Article VI of the Constitution.

Plaintiffs allege that by "delegating their police powers to private businesses and individuals," the City Defendants violated Article II, § 3 and Article VI, § 3 of the U.S. Constitution. Neither of these constitutional provisions has any bearing on the activities of local government. Article II, § 3 addresses the powers of the President of the United States with respect to Congress, which has no application in this case. U.S.C.A. Const. Art. II § 3. Article VI, which variously affirms the validity of debts entered into before adoption of the Constitution, sets forth the Supremacy Clause, states that Senators and Representatives shall be bound by their oaths, and forbids religious tests for qualification to any office or public trust of the United States, does not even have a section 3, and has no bearing on this case. U.S.C.A. Const. Art. VI.

### 6.     Plaintiffs have not alleged an actionable violation of the ADA.

Plaintiffs attempt to allege a violation of the ADA. (Doc. #1-1, at CM/ECF p. 30, ¶ 154). A Title III ADA discrimination claim "requires that a plaintiff establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Hillesheim v. Myron's Cards & Gifts, Inc.,* 897 F.3d 953, 956 (8th Cir. 2018) (citing *Roberts v. Royal Atl. Corp.,* 542 F.3d 363, 368 (2d Cir. 2008)). The Third Amended Complaint contains no facts that could plausibly support such a claim—including no facts that either

Plaintiff is disabled within the meaning of the ADA. Even if Plaintiffs had included (or could allege) such facts, the Eighth Circuit Court of Appeals has stated that such an ADA violation is not actionable under 42 U.S.C. § 1983. *Pona v. Cecil Whittaker's, Inc.,* 155 F.3d 1034, 1038 (8th Cir. 1998). Further, "the public-entity limitation" precludes the ADA claims against Mayor Gaylor Baird and Health Director Lopez in their individual capacities. *Randolph v. Rodgers,* 253 F.3d 342, 348 (8th Cir. 2001).

## B. The rights that Plaintiffs claim were violated have not been clearly established.

Even assuming for the sake of argument that Plaintiffs have pled sufficient facts to show the violation of a constitutional right, the rights alleged by Plaintiffs were not clearly established so as to enable them to overcome the defense of qualified immunity.

To satisfy the notice requirement for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987). It is not required that there be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672, 683 (8th Cir. 2019) citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074 (2011). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013) (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004)).

This Court recently applied the doctrine of qualified immunity in a case similar to this—one involving a "kitchen sink" list of claims against municipal defendants who had promulgated and allegedly selectively enforced measures to arrest the spread of COVID-19. See *Harrington,* 2021 WL 2321757. The Court emphasized that municipal officials are entitled to "fair notice" that their actions are unlawful before being subjected to liability and suit. *Id.*, 2021 WL 2321757 at *13. It also held that qualified immunity protected a health director who issued and enforced a DHM to combat the spread of COVID-19 and a mayor, police chief, and others whose personal involvement in alleged violations was not specifically set forth in the complaint. *Id.*, 2021 WL 2321757 at *12–14.

Generally, and again, with no specificity, Plaintiffs allege Mayor Gaylor Baird violated their constitutional rights by authorizing, adopting, and enforcing invalid DHMs. (Doc. #1-1, at CM/ECF p. 13, ¶¶ 70-71, 73). Plaintiffs also allege Director Lopez violated their constitutional rights by unlawfully issuing DHMs that were more restrictive than those issued by DHHS. (Doc. #1-1, at CM/ECF p. 7, ¶¶ 33, 35, 36, 46-51, 80). To the knowledge of City Defendants, there is no authority clearly establishing a right to be free from enforcement of health measures limiting occupancy and implementing masks, social distancing, and early closing times to arrest the spread of communicable disease in the midst of a global pandemic. Further, as noted above, this Court has already held that a health director during the COVID-19 pandemic is not on notice that she was violating clearly established rights by issuing DHMs.

Plaintiffs may try to distinguish *Harrington* on the grounds that the DHM there was "in line with" DHMs adopted by the State of Nebraska, and that the DHMs in this case were in some respects more restrictive. Such an attempt ignores the broad areas of agreement between the DHMs issued by the Lincoln-Lancaster County Health Department and DHHS. But more importantly, to support such a distinction, Plaintiffs would need to point to a case clearly establishing that a local government is prohibited from issuing or enforcing such a DHM as a matter of federal constitutional law. They cannot do so, because no such case exists.

When the first DHM was issued in March 2020, the only existing precedent on point was the *Jacobson* case (addressing the constitutionality of mandating the smallpox vaccine). In *Jacobson,* the Supreme Court held that, when faced with a public health crisis, a state may implement measures that infringe on constitutional rights. *Jacobson,* 197 U.S. at 27, 25 S. Ct. 358. In light of the broad *Jacobson* framework, it cannot be said that Mayor Gaylor Baird or Director Lopez had any notice—let alone, the "fair notice" required to overcome qualified immunity—that authorizing, adopting, enforcing, or issuing DHMs that exceeded the restrictions set by DHHS or without approval of DHHS violated clearly established constitutional or statutory rights. For this reason, Mayor Gaylor Baird and Health Director Lopez, in their individual capacities, are entitled to qualified immunity.

## C.  With respect to most of their claims, Plaintiffs have not alleged personal involvement by the Mayor and Health Director.

A suit against a government official in his individual capacity "seek[s] to impose personal liability upon a government official for actions he takes under color

of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099 (1985). The plaintiff must allege sufficient facts supporting the individual defendant's personal involvement or responsibility for the constitutional violation. *Martin v. Sargent*, 780 F.2d 1334, 1337-39 (8th Cir. 1985) (Prisoner litigation named several prison officials in individual capacities. To form a cognizable § 1983 claim against the individuals, plaintiff must allege the individual was personally involved or had direct responsibility for incidents that injured plaintiff. Actions attributed to individual defendant had to amount to a constitutional violation.) To establish liability, the plaintiff must show that the official, acting under color of state law, caused a deprivation of a federal right. *Graham*, 473 U.S. at 166, 105 S. Ct. 3099.

Plaintiffs' Third Amended Complaint is replete with conclusory allegations, but there are very few actual facts pled to support the misconduct. Other than involvement in the appointment of Health Director Lopez and approval of the DHMs, the Third Amendment Complaint fails to allege any personal involvement by the Health Director Lopez or Mayor Gaylor Baird in any alleged violations. For example, there is no allegation that Health Director Lopez or Mayor Gaylor Baird personally seized Plaintiffs' property or directed retaliatory enforcement of the DHMs. This lack of personal involvement provides an additional, independent reason why qualified immunity bars Plaintiffs' claims. See *Harrington*, 2021 WL 2321757, at *12–14.

## III. Plaintiffs' claims against the City of Lincoln also fail.

A municipality cannot be held liable under 42 U.S.C. § 1983 on a vicarious liability theory—that is, a municipality cannot be held liable solely because it employs a tortfeasor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In order to state

a proper claim for § 1983 liability against the City, Plaintiffs must show that a constitutional violation resulted from 1) an official municipal policy; 2) an unofficial custom; or 3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th. Cir. 2016).

As shown in Section II.A, above, Plaintiffs have failed to allege any actionable violation of a federal constitutional right. This failure bars Plaintiffs' claims against the City, just as it entitles the individual defendants to qualified immunity. Even if Plaintiffs had alleged a constitutional violation, they have not pled facts in their Third Amended Complaint to sufficiently allege a constitutional violation resulting from official policy or custom or a failure to train or supervise. The claims against the City and each individual City Defendant in their official capacity (assuming the claims against them are not dismissed as redundant or barred by qualified immunity) should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, City of Lincoln, Mayor Gaylor Baird, in her official and individual capacity, Health Director Lopez, in her official and individual capacity and former Police Chief Bliemeister, in his official capacity, respectfully request that the Court enter judgment in their favor and against Plaintiffs in their Fourth Cause of Action.

Respectfully submitted August 23, 2021.

> CITY OF LINCOLN, MAYOR LEIRION GAYLORBAIRD, HEALTH DIRECTOR PATRICIA D. LOPEZ, JEFFREY BLEIMEISTER, City Defendants

BY: *s/Danielle Rowley*

DANIELLE ROWLEY, #25505
RICHARD W. TAST JR., #25832
ASSISTANT CITY ATTORNEYS
CITY OF LINCOLN LAW DEPARTMENT
555 South 10th Street | Suite 300
Lincoln, NE 68508
Phone: 402-441-7281
drowley@lincoln.ne.gov
rtast@lincoln.ne.gov

YOHANCE L. CHRISTIE, #24271
CITY ATTORNEY
CITY OF LINCOLN LAW DEPARTMENT
555 South 10th Street | Suite 300
Lincoln, NE 68508
Phone: 402-441-7281
ychristie@lincoln.ne.gov

ANDRE R. BARRY, #22505
CLINE WILLIAMS WRIGHT JOHNSON
AND OLDFATHER, L.L.P.
233 South 13th Street
1900 U.S. Bank Building
Lincoln, NE 68508
(402) 474-6900
abarry@clinewilliams.com

ATTORNEYS FOR CITY DEFENDANTS

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d), I certify that this brief contains 7,597 words as counted by the Microsoft Word 365 word processing software used to generate the brief. The word count function of this software was applied to include all text, including the caption, headings, footnotes, and quotations.

BY: *s/Danielle Rowley*

DANIELLE ROWLEY

29

CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2021, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Nebraska, causing notice of such filing to be served upon all parties registered on the CM/ECF system.

By: *s/Danielle Rowley*
DANIELLE ROWLEY