IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BENJAMIN MADSEN, and MADSEN BOWLING AND BILLIARD CENTER, CO., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LINCOLN, a Municipal Corporation; LEIRION GAYLOR BAIRD, Mayor of the City of Lincoln in her official and individual capacities; PATRICIA D. LOPEZ, acting Health Director, in her official and individual capacities; JEFFREY BLIEMEISTER, Lincoln Police Chief in his official capacity; and LANCASTER COUNTY, a Political Subdivision, <br><br> Defendants. | 4:21CV3075 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on defendants City of Lincoln (the "City"), Leirion Gaylor Baird ("Baird"), Patricia D. Lopez ("Lopez"), and Jeffrey Bliemeister's ("Bliemeister," and collectively, the "City defendants") Motion for Partial Judgment on the Pleadings (Filing No. 36). The City defendants seek to dismiss "Count IV" of plaintiffs Benjamin Madsen and Madsen Bowling and Billiard Center Co.'s (together, "Madsen Bowling") Third Amended Complaint (Filing No. 1-1). Count IV, brought under 42 U.S.C. § 1983, alleges the City defendants violated numerous constitutional rights of Madsen Bowling.[1] For the alleged violations, Madsen Bowling seeks damages and equitable relief. Almost all the alleged violations against the City defendants stem from the promulgation

---

[1] Madsen Bowling asserts this claim, and all its claims, on behalf of itself and other similarly situated "businesses and individuals who have been damaged by the unlawful Directed Health Measures ("DHMs") promulgated and enforced by the Defendants," pursuant to Neb. Rev. Stat. § 25-319. Class certification has not yet been sought or issued.

and enforcement of various DHMs issued during the early stages of the COVID-19 pandemic. For the reasons stated below, the City defendants' motion is granted.

I.   BACKGROUND

This case concerns the COVID-19 pandemic-related DHMs that placed restrictions on business operations in Lincoln, Nebraska, and Lancaster County, Nebraska. On March 6, 2020, the first presumptive positive case of COVID-19 was reported in Nebraska, and on March 13, 2020, former U.S. President Donald Trump declared the COVID-19 outbreak a national emergency. Pete Ricketts, Governor of Nebraska, declared a State of Emergency on the same day. By March 25, 2020, the Nebraska Department of Health and Human Services ("DHHS") issued the first DHM for Lancaster County, which in part, limited gatherings, restricted the sale of food and alcohol at restaurants and bars, and reduced the capacity of daycare and childcare facilities. Lopez, the acting health director for the City, issued a similar DHM on the same day.

DHHS issued another DHM on April 30, 2020, and Lopez followed suit by issuing a similar—but more restrictive—DHM on May 4, 2020. That DHM issued by Lopez was more restrictive than the DHM issued by DHHS in that it (1) defined "gatherings" more narrowly, (2) forbade the sale of alcohol for on-site consumption, (3) prohibited door-to-door sales for certain businesses, and (4) imposed greater restrictions on child-care centers. Lopez and DHHS continued issuing more DHMs throughout 2020 to adapt to the ever-changing circumstances surrounding the COVID-19 pandemic. Many of the DHMs issued by Lopez for the City were more restrictive than those issued by DHHS for Lancaster County.

On July 20, 2020, Lopez issued DHM 2020-07, which was the first DHM actively enforced by the City. Under that DHM, the City issued citations and took actions to shut down businesses that were not complying with it. The penalty for violating a DHM was punishable by a fine up to $500, six months in jail, or both a fine and jail time. To enforce these DHMs, Baird encouraged members of the public to report suspected violations. The

Lincoln Police Department was responsible for issuing citations for DHM violations, and they continued issuing citations through the end of 2020. Some of the citations issued did not identify which DHM provision was allegedly violated.

Despite efforts made by affected business owners to have their voices heard, Lopez and other staff denied individualized hearings but did offer teleconference hearings for "select business owners" to provide input and feedback on the DHMs. Business owners, like Madsen Bowling, did not feel their input or feedback was well-received or implemented, and many businesses had a difficult time operating under the DHM restrictions. While certain DHMs were in effect, restaurants and bars could not serve alcoholic beverages "without a meal," had to close by certain times, had to restrict the number of patrons visiting their establishments, and were required to order staff and patrons to wear a face mask. Some of these restrictions led businesses to close temporarily or shut down completely.

The Lincoln City Council (the "City council") took up another legislative measure during the relevant time period. On August 31, 2020, the City council amended Lincoln Municipal Code ("LMC") § 2.04.010 to prohibit citizens from bringing in and posting signs in the city-council chambers while in session.

## II. DISCUSSION
### A. Standard of Review

As a general rule, a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is addressed under the same standard as a Rule 12(b)(6) motion to dismiss. *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). In deciding such a motion, the Court accepts "as true all factual allegations in the complaint and draw[s] all reasonable inferences in favor of the nonmoving party." *McDonough v. Anoka County*, 799 F.3d 931, 945 (8th Cir. 2015). While a plaintiff does not need to provide "'detailed factual allegations'" they must give "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, the Court is "not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough*, 799 F.3d at 945 (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) or 12(c) motion, "[t]he [C]ourt generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas County*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

**B.     Constitutional Scrutiny During a Public-Health Crisis**

Prior to addressing Madsen Bowling's constitutional claims, the parties dispute whether the standard set forth in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), provides the proper lens through which the Court should analyze Madsen Bowling's alleged constitutional claims. In *Jacobson*, the Supreme Court upheld a state law mandating vaccination against smallpox. Many courts, including the Eighth Circuit, endorsed the *Jacobson* approach for analyzing constitutional violations "in the context of a public-health crisis." *In re Rutledge*, 956 F.3d 1018, 1027 (8th Cir. 2020). In *Rutledge*, the Eighth Circuit concluded that *Jacobson* established a "two-part framework" for analyzing constitutional claims during a public-health crisis, explaining that "state action is susceptible to constitutional challenge only if it . . . [1] 'has no real or substantial relation to those objects, or [2] is beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *Id.* (quoting *Jacobson*, 197 U.S. at 31). The Eighth Circuit found the district court's failure to apply the *Jacobson* framework was an abuse of discretion. *Id.* at 1027.

4

But since the Eighth Circuit's decision in *Rutledge*, the Supreme Court has cast serious doubt on *Jacobson's* applicability. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. ___, ____, 141 S. Ct. 63, 67 (2020) (per curiam). In *Roman Catholic Diocese of Brooklyn*, the Supreme Court did not explicitly overrule *Jacobson*, but it applied strict scrutiny rather than the *Jacobson* framework when evaluating the plaintiffs' claims that the COVID-19 restrictions for attendance at religious services violated their rights under the free exercise clause of the First Amendment. *Id.*; *see also id.* at 70 (noting *Jacobson* and its framework "pre-dated the modern tiers of scrutiny") (Gorsuch, J., concurring). The Eighth Circuit has not yet weighed in on *Jacobson's* applicability in the wake of *Roman Catholic Diocese of Brooklyn*. But under either standard, Madsen Bowling's claims fail.

### C. Official-Capacity Claims against Baird, Lopez, and Bliemeister

Madsen Bowling first brings suit against Baird in her official capacity as the mayor of Lincoln, Lopez in her official capacity as the acting health director in Lincoln, and Bliemesiter[2] in his official capacity as Lincoln police chief. The City defendants argue these claims should be dismissed because "the real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Because a suit against an official in their official capacity is really a suit against the governmental agency, the individual official-capacity claims "should be dismissed as redundant" because "the employing entity is also named." *King v. City of Crestwood*, 899 F.3d 643, 650 (8th Cir. 2018). Madsen Bowling appears to concede its official-capacity claims against Baird, Lopez, and Bliemeister should be dismissed as redundant.

### D. Individual-Capacity Claims against Baird and Lopez

A plaintiff may bring a § 1983 claim against a public official who, acting under color of the law, deprives a citizen of "any rights, privileges, or immunities secured by the Constitution and laws of the United States." 42 U.S.C. § 1983. Madsen Bowling alleges

---

[2]Madsen Bowling brought suit against Bliemesiter only in his official capacity.

5

Baird and Lopez—primarily through the issuance and enforcement of various DHMs—violated its rights to procedural and substantive due process, equal protection, freedom of speech and assembly, unconstitutionally seized its property in violation of the Fourth Amendment, instituted a regulatory taking of its property in violation of the Fifth Amendment, and allege the enforcement of the DHMs violate the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA").

Baird and Lopez argue they are entitled to qualified immunity on all of Madsen Bowling's § 1983 claims. "Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in [their] individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Ark. Dep't. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). If the plaintiff fails to allege sufficient facts on either prong, then the official is entitled to qualified immunity. *See Waters v. Madson*, 921 F.3d 725, 735 (8th Cir. 2019) ("Qualified immunity is appropriate only if no reasonable factfinder could answer yes to both of these questions."). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

        **1.**    **Due Process Claims**

To make out a claim for procedural or substantive due process, a plaintiff must sufficiently allege the deprivation of life, liberty, or property. *See e.g.*, *Mickelson v. City. of Ramsey*, 823 F.3d 918, 930 (8th Cir. 2016) (explaining "an individual must have a constitutionally protected interest in life, liberty, or property in order for the protections of procedural due process to attach"). Generally, "[l]iberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and

the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). Without such a protected interest, the due process challenge fails. *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005).

It is not clear from Madsen Bowling's third amended complaint what interests it believes were at stake, whether its claims are grounded in violations of its procedural or substantive due process rights, or who deprived it of those interests. In its reply brief, Madsen Bowling clarifies it alleged protected liberty interests in (1) having Lopez, the health director, issue DHMs that comply with the authority granted to her in the LMC, (2) engaging in commerce, specifically in "operating their business without the imposition of DHMs," and (3) being free from "ambiguous declarations of criminal law." Madsen Bowling also alleges deprivations of its property interests in its "licenses to operate as a restaurant, to sell liquor, [and to] maintain amusement devices." More generally, Madsen Bowling argues it should have had post-deprivation hearings to contest the validity of the DHMs that infringed upon its above-mentioned liberty and property interests and that some of the DHMs were so outrageous to constitute substantive due process violations. Madsen Bowling does not specifically state which claims involved Baird or Lopez, but it argues that they were directly involved in implementing the unconstitutional DHMs and may be held liable for that reason.

###### a. State-Created Liberty Interest

Madsen Bowling first alleges it has a valid state-created liberty interest stemming from LMC § 8.18.140. It argues that section places a substantive limit on the health director's authority to issue DHMs. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) ("[A] State creates a protected liberty interest by placing substantive limitations on official discretion."). As Madsen Bowling frames it, Lopez exceeded that authority because some DHMs—such as the "masking requirements, prohibitions on door-to-door sales for select businesses, and arbitrary restrictions on alcohol sales"—were "more restrictive" than those issued by DHHS for Lancaster County.

To determine whether a state law creates an enforceable liberty interest, courts "examin[e] closely the language of the relevant statutes and regulations" for "'explicitly mandatory language,' *i.e.* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Forrester v. Bass*, 397 F.3d 1047, 1055 (8th Cir. 2005) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Section 8.18.140 grants that the health director "may order the closure of, or restrict access to any business, office, healthcare facility, school or government agency or department" and "may adopt any other control measures which are consistent with applicable guidelines of a public sector partner, emergency management agency, and other applicable laws and regulations." No part of this section contains the necessary "explicitly mandatory language" or a "specific directive" requiring a particular outcome to create a constitutionally protected liberty interest. *See Forrester*, 397 F.3d at 1056 (explaining the demanding standard required for a state statute to create a constitutional protection under the Fourteenth Amendment). Without such an established liberty interest, there can be no due process violation. *Id.* at 1054.

        **b.**        **Engaging in Commerce**

Next, Madsen Bowling asserts a deprivation of its "liberty interest in engaging in commerce." It argues the DHMs, as issued by Baird and Lopez, prevented it from fully operating its business. Madsen Bowling points to provisions set forth in DHMs 2020-12 and 2020-13, signed in November 2020, which required certain businesses to close at 9:00 pm, reduce occupancy to 25% capacity, and required that any alcoholic beverages be "served with a meal." In support, Madsen Bowling cites *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), for the proposition that there is a protected liberty interest for persons "to engage in any of the common occupations of life." But the "Fourteenth Amendment protects 'the liberty to pursue a particular calling or occupation, . . . not the right to a specific job.'" *Robbins v. Becker*, 794 F.3d 988, 994 (8th Cir. 2015) (quoting *Habhab v. Hon*, 536 F.3d 963, 968 (8th Cir. 2008)).

8

Madsen Bowling has not alleged it was unable to continue operating as a bowling alley, bar, or restaurant, but only that its operating time, services, and capacity were temporarily restricted. Madsen Bowing points to no authority suggesting the Fourteenth Amendment protects the "liberty" to operate or engage in commerce without such restrictions during a public-health emergency. *See In re Rutledge*, 956 F.3d at 1027 ("[W]hile constitutional rights do not disappear during a public health crisis, 'the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations.'" (quoting *Jacobson*, 197 U.S. at 29)).

Baird and Lopez also argue that even if there is a general right to do business, there is no procedural due process violation here because the DHMs are generally applicable rules, and the procedural guarantees of notice and an individualized opportunity to be heard exist only "when the government makes an individualized determination, not when the government commits a legislative act equally affecting all those similarly situated." *Foster v. Hughes*, 979 F.2d 130, 132 (8th Cir. 1992) (citations omitted); *see also Ind. Land Co., LLC v. City of Greenwood,* 378 F.3d 705, 710 (7th Cir. 2004) ("[L]egislation normally is general in its scope rather than targeted on a specific individual, and its generality provides a safeguard that is a substitute for procedural protections."). "[G]overnmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individualized notice and hearing; general notice as provided by law is sufficient." *Halverson v. Skagit Cnty*, 42 F.3d 1257, 1261 (9th Cir. 1995). The DHMs were generally applicable legislative actions that affected all restaurants and bars. The DHMs were not directed at only a few individuals.

As to Madsen Bowling's assertion that these DHMs also violate its substantive due process rights, it has not alleged facts to support a conclusion that these restrictions on commerce were "'so egregious or outrageous that it is conscience-shocking.'" *Habhab*, 536 F.3d at 968 (quoting *Forrester*, 397 F.3d at 1058). "Substantive due process 'is

9

concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power.'" *Winslow v. Smith*, 696 F.3d 716, 736 (8th Cir. 2012) (quoting *Golden ex rel. Balch v. Anders*, 324 F.3d 650, 652-53 (8th Cir. 2003) (alterations in original)). The need to prevent the spread of COVID-19 was severe, and the DHMs provided legitimate ways to limit community spread.

### c. Ambiguous Penal Law[3]

Madsen Bowling alleges the "enforced sections of the City's Communicable Disease Act and the DHMs are, on their face and as applied, unconstitutionally vague [and] overbroad" such that they violate due process under the Fifth and Fourteenth Amendments. In its brief, Madsen Bowling focuses only on its void-for-vagueness argument as to two DHM terms that it believes are unconstitutionally vague: the prohibition of serving alcohol "without a meal" and allowing certain exemptions for "necessary shopping."

"The Fifth Amendment guarantees every citizen the right to due process." *United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2002). "An ordinance violates the right to be free from a deprivation of liberty without due process if it fails to give fair warning that certain conduct is prohibited." *Langford v. City of St. Louis*, 3 F.4th 1054, 1059 (8th Cir. 2021). Courts conduct a "two-part test" to determine "whether a statute is vague: 'The statute must first provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement.'" *Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 886 (8th Cir. 2021) (quoting *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009)). In reviewing a statute or ordinance for vagueness, courts "first determine if a statute is vague as applied to the [party's] conduct, and only if it is will we

---

[3]Madsen Bowling argues the DHMs are enforced by the Lincoln Police Department and a violation of a DHM can result in a criminal penalty of up to six months in jail, a $500.00 fine, or both a fine and jail time. The City defendants do not meaningfully deny the DHMs could result in criminal penalties.

10

consider whether a statute is facially unconstitutional." *United States v. KT Burgee*, 988 F.3d 1054, 1060 (8th Cir. 2021).

To support its as-applied challenge, Madsen Bowling generally argues the DHMs were arbitrarily enforced against it because the Lincoln Police Department issued citations "for such actions as 'violate DHMs'" but were "unable to identify which specific provision" was violated. Madsen Bowling also argues they were issued citations for behavior of "third-party patrons."

Baird and Lopez argue Madsen Bowling's assertions do not sufficiently show those DHMs, as applied to Madsen Bowling, deprived it of any liberty interest. The Court agrees. Indeed, Madsen Bowling's allegations are insufficient to state an as-applied claim, in part because the allegedly vague DHMs were never "applied" to Madsen Bowling's conduct. Madsen Bowling does not allege it was issued citations for serving alcohol "without a meal" or for somehow violating the exception for "necessary shopping." Without some harm stemming from the allegedly vague terms, Madsen Bowling cannot show it was deprived of liberty without due process. The Court need not address Madsen Bowling's facial challenge. *See id.* To the extent Madsen Bowling brings this claim against Baird and Lopez for their involvement in enacting the DHMs, they are entitled to qualified immunity.

### d. Property Interest in Licenses and Permits

Finally, Madsen Bowling argues it has a protected property interest in its "licenses to operate as a restaurant, to sell liquor, [and to] maintain amusement devises." Of note, Madsen Bowling does not actually allege in is third amended complaint that it ever had a liquor license, a permit to operate as a restaurant, or a permit for "amusement devices." Baird and Lopez argue those omissions alone establish Madsen Bowling has failed to state a claim.

Madsen Bowling also neglects to recognize that property rights are created by state law. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."). Nebraska law clearly states that "a liquor license is a purely personal privilege, does not constitute property, and vests no property rights in a licensee." *Bali Hai', Inc. v. Neb. Liquor Control Comm'n*, 236 N.W.2d 614, 618 (Neb. 1975); *see also* Neb. Rev. Stat. § 53-149 ("A license shall be purely a personal privilege . . . and shall not constitute property."). Madsen having cited no cases, and the Court having found none, it is not clear that a permit to operate a restaurant or a permit to maintain "amusement devices" creates a property interest, nor is it clearly established that temporarily limiting those licenses would be a violation of such interest. Another strike for Baird and Lopez.

### 2. Equal Protection

In addition to alleging multiple procedural and substantive due process violations under the Fourteenth Amendment, Madsen Bowling also argues it has stated a Fourteenth Amendment equal-protection claim. Baird and Lopez point out Madsen Bowling "did not allege a Fourteenth Amendment Equal Protection claim under § 1983. They did so only under the Nebraska Constitution." Even so, the Court will briefly address why this approach fails.

"The Equal Protection Clause of the Fourteenth Amendment commands that no [s]tate shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In evaluating an equal-protection claim, the first step is to examine "whether the plaintiff has demonstrated that [it] was treated differently than others who were similarly situated." *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018). "When a State treats persons differently based on a suspect

classification, such as race, the state action is subject to strict judicial scrutiny. Where no suspect classification is involved, however, the State need only show that the differential treatment is rationally related to a legitimate state interest." *Exec. Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562, 566 (8th Cir. 2008).

Madsen Bowling does not allege it falls within a suspect classification; it puts forth a "class of one" claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (recognizing a "class of one" equal protection claim). To succeed on such a claim, Madsen Bowling must allege facts that it was similarly situated to others who received preferential treatment, and those who were "alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)). A class-of-one plaintiff must also "provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008). Madsen Bowling fails to identify, or even allude to, any other similarly situated individual or business to which it believes it is identical in *any* material respect. Instead, it relies on generalities, such as asserting the DHMs made "irrational classifications" between restaurants and "other businesses." It has failed to state an equal protection claim.

### 3. Fourth Amendment Claim for Unlawful Seizure of Property

Madsen Bowling next asserts Baird and Lopez improperly acted under color of state law when they "unreasonably exercise[d] dominion and control over the Plaintiffs' property." More specifically, Madsen Bowling alleges the DHMs interfered with its property by (1) "unreasonably restricting capacity" in its business, (2) restricting the hours of operation, (3) limiting "the provision of certain specified goods and services involving alcohol, food, and other beverages," (4) "prohibiting the use of certain styles of seating," (5) prohibiting the use of "games and entertainment devices," (6) "prohibiting establishment owners from modifying their legal rights to provide new goods or services," and (7) "by forcing businesses to close completely." It argues those interferences with its

property constitute unconstitutional seizures and are unreasonable "considering the lack of scientific evidence that any of them have a meaningful impact on public health and welfare." Not only are all of Madsen Bowling's assertions of the "seizures" completely conclusory—which is reason enough to dismiss this claim, *see Twombly*, 550 U.S. at 555 (explaining mere "labels and conclusions" are insufficient)—it also fails to establish these types of restrictions are clearly established Fourth Amendment violations.

### 4. Violations of First Amendment Rights
#### a. Freedom of Speech in City Council Meetings

Madsen Bowling first alleges its freedom of speech and expression were restricted when the City council passed an ordinance on August 31, 2020, that prohibited posting signs in the chambers while the city council is in session.[4] The section of the ordinance at issue states:

> To expedite business of the Council in every way compatible with the rights of its members and the public, no individual, other than a council person or clerk, shall be allowed to address the Council except from the podium, and the posting of signs by any member or any individual within the chambers is prohibited while the Council is in session.

*See* LMC § 2.04.010, 2-1(g).

The protection afforded to such expression depends on the nature of the forum at issue. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). City council meetings open to the public are generally regarded as limited public forums. *See*, *e.g.*, *Galena v. Leone*, 638 F.3d 186, 199 (3d Cir. 2011) (finding the city council meeting was a limited public forum); *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010) (noting "city council meetings, once open to public participation, are limited public forums."). "Limited public forums . . . include public properties that are not by tradition or designation public forums but have been opened by the government for limited purposes,

---

[4]To the extent Baird, as the Mayor of Lincoln, interacts with or oversees the City council, the Court presumes this claim is asserted against her and the City, discussed below. Madsen Bowling makes no argument as to how this claim could possibly apply to Lopez.

communicative or otherwise." *Powell v. Noble*, 798 F.3d 690, 699 (8th Cir. 2015). In a limited public forum, certain restrictions on speech are permitted, so long as they "are reasonable and viewpoint-neutral." *Powell*, 798 F.3d at 700.

Despite Madsen Bowling's blanket attempt to characterize § 2.04.010, 2-1(g) as "not viewpoint neutral," the ordinance's plain language prohibits posting all signs—both by members of the city council or any individual present at the meeting. There are no facts alleged that it was applied only as to certain viewpoints or so applied against Madsen Bowling.

Not only is the restriction against posting signs during council meetings viewpoint-neutral, this restriction is also reasonable. Section 2.04.010, 2-1(g) itself states its purpose is to "expedite business of the" city council. That is a perfectly reasonable explanation for a restriction in a limited public forum. *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 335 (8th Cir. 2011) (explaining that access to a limited public forum "may be based on . . . the practical need to restrict access for reasons of manageability"); *see also Rowe v. City of Cocoa*, 358 F.3d 800, 803 (11th Cir. 2004) ("There is a significant governmental interest in conducting orderly, efficient meetings of public bodies."). In addition, "[t]he reasonableness of a restriction on access is supported when 'substantial alternative channels' remain open for the restricted communication." *Id.* (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983)). Section § 2.04.010, 2-1(g) leaves open the opportunity to address the city council and audience from the podium. This restriction does not unconstitutionally restrict Madsen Bowling's freedom of speech.

### b. Freedom of Assembly

Madsen Bowling's other First Amendment claim relates to the DHMs. In its third amended complaint, Madsen Bowling alleges the DHMs that prohibit large gatherings of people violate their freedom to assemble because those restrictions prevented "lawful interaction, expressive advocacy, and affects persons who pose no danger whatsoever to

others." The freedom of association encompasses two types of associational rights: (1) intimate association, or the right "to enter into and maintain certain intimate human relationships" without "undue intrusion by the State," and (2) expressive association, "the right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984).

It is not clear what intimate relationships or other protected First Amendment rights Madsen Bowling believes were violated by the DHMs, and it is not surprising that Baird and Lopez argue Madsen Bowling "fail[s] to allege that they were engaged in any conduct that is protected by the First Amendment." To the extent Madsen Bowling operates as a bowling alley, restaurant, or bar, it is not clearly established that relationships with its employees and customers would be the type of "intimate" relationships protected by the freedom of association. *See, e.g., id.* at 620 (noting familial relationships are the type of intimate relations protected by the First Amendment, but those lacking such intimacy, "such as a large business enterprise," are too remote); *see also Michaelidis v. Berry*, 502 F. App'x 94, 96 (2d Cir. 2012) ("Plaintiffs' relationships with their landlords, their restaurant customers, and their employees are not sufficiently intimate to implicate this [First Amendment] protection."). Other than Madsen Bowling's involvement with the City council, as discussed above, it has not alleged other facts to support a claim that the DHM limiting gatherings to ten or more persons interfered with any protected First Amendment activities. Baird and Lopez are therefore entitled to qualified immunity.

### 5. Regulatory Taking Under the Fifth Amendment

Next, Madsen Bowling asserts the DHMs that restricted its ability to fully operate its business[5] amounted to a regulatory taking under the Fifth Amendment, as incorporated

---

[5]In its brief, Madsen Bowling specifically argues DHM 2020-14 deprives members of the class from all economically beneficial use of their property and business, specifically for those "door-to-door salespeople, businesses subject to the event plan restrictions, and businesses that serve alcohol without meals."

16

by the Fourteenth Amendment. As pointed out by Baird and Lopez, Madsen Bowling does not clearly assert a claim for an unconstitutional taking under § 1983; it makes that argument under the Nebraska Constitution. Nevertheless, the Court briefly addresses it.

The takings clause in the Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V. In deciding whether the government has enacted a regulatory taking, courts consider: (1) "the economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). As to the first two factors, Madsen Bowling makes only conclusory statements, such that "businesses that serve alcohol without meals were completely deprived of all rights incident to their business ownership," or "[e]stablishments that rely on bar-seating rather than table-seating lost their primary source of revenue." None of these generalities show the property was "commercially impracticable" or show the economic impact of the temporary and variable regulations. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 493 (1987).

Finally, the third factor weighs heavily in favor of Baird and Lopez. Ordering temporary closures or placing restrictions on capacity during a pandemic are surely part of a "public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124. The DHMs were issued to protect the citizens of Lincoln and Lancaster County by slowing the spread of COVID-19. Balancing all of these factors, Madsen Bowling has failed to allege any such taking violated the Fifth Amendment, and it has also failed to show that these regulations would be a clearly established violation of the takings clause. *See Daugherty Speedway, Inc. v. Freeland*, 520 F. Supp. 3d 1070, 1078 (N.D. Ind. 2021) (collecting cases and finding COVID-19 health measures do not amount to a regulatory taking).

### 6. Americans with Disabilities Act

Madsen Bowling makes two stray statements in its third amended complaint related to the ADA. First, it states the "The Mayor, by authorizing, adopting and enforcing the invalid DHMs, created a policy requiring private employers and businesses to violate the [ADA] by unlawfully discriminating against individuals with disabilities that contradict mask usage." The only other time Madsen Bowling references the ADA in its third amended complaint is in the section titled, "§ 1983," stating, "The DHMs and the enforcement thereof violate the [ADA] in that the activities of the City unlawfully discriminate or cause discrimination against individuals on the basis of a disability." Based upon these meager allegations, Madsen Bowling has failed to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### E. Claims against the City

Madsen Bowling asserts the same § 1983 claims against the City as against Baird and Lopez, in their individual capacities. It is not surprising, then, that the City also argues Madsen Bowling's claims against it should be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6). While a municipality can be liable under § 1983, "a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389 (8th Cir. 2007). It may be liable under § 1983, however, if the constitutional violation was the result of an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *See Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013).

Madsen Bowling argues the DHMs are official municipal policies of the City and "that their deprivation of rights arises from" the City's "implementation and enforcement of the DHMs." As thoroughly addressed above, Madsen Bowling failed to establish any constitutional violations arising out of the implementation or enforcement of the DHMs. Madsen Bowling also fails to allege any facts to support a conclusion the City failed to train or supervise its employees.

## III.  CONCLUSION

Madsen Bowling asserted several § 1983 claims against the City defendants[6] for violating its constitutional rights through the enactment of certain DHMs in response to the COVID-19 pandemic. As fully set forth above, the claims against Baird, Lopez, and Bliemeister in their official capacities are dismissed as redundant. Baird and Lopez are entitled to qualified immunity on claims brought against them in their individual capacities. The claims against the City must also be dismissed because Madsen Bowling has failed to allege any actionable constitutional violations.

Based on the foregoing,

IT IS ORDERED:

1. Leirion Gaylor Baird, in her official and individual capacities; Patricia D. Lopez, in her official and individual capacities; Jeffrey Bliemeister, in his official capacity; and the City of Lincoln's joint Motion for Partial Judgment on the Pleadings (Filing No. 36) is granted.

2. Count IV of plaintiffs Benjamin Madsen and Madsen Bowling and Billiard Center Co.'s Third Amended Complaint (Filing No. 1-1), brought pursuant to 42 U.S.C. § 1983, is dismissed as to the City defendants.

Dated this 8th day of December 2021.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

---

[6]In its third amended complaint, Madsen Bowling asserts that it seeks "equitable and injunctive relief" from "all defendants under this cause of action," but it sought "monetary damages" only from the City defendants. The only remaining defendant, who has not joined in the present motion, is Lancaster County.